# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VICTORIA MOORE**, *on behalf of herself and similarly situated employees*, | )<br>)<br>) |
| **Plaintiff,** | ) 2:12-cv-1135<br>) |
| v. | )<br>) |
| **PNC BANK, N.A.,** | )<br>) |
| **Defendant.** | )<br>) |

## MEMORANDUM OPINION AND ORDER OF COURT

Before the Court is the PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION (ECF No. 31) filed by Victoria Moore ("Moore" or Plaintiff") with brief in support (ECF No. 32). Defendant PNC Bank, N.A. ("PNC" or "Defendant") filed a brief in opposition (ECF. No. 40); Plaintiff filed a reply brief (ECF No. 44). Along with their respective filings, both parties submitted numerous exhibits germane to the pending issues. (ECF Nos. 31-2-32-10 (Moore); 39-1-39-16 (PNC); 44-1-44-3 (Moore)). The issues have been fully briefed and well-argued on behalf of the parties. Accordingly, the motion is ripe for disposition.

### I. Background

PNC is a national banking association that provides personal and commercial banking services through several sources, including its branch locations found in many states. Throughout the country, PNC operates over 2,800 branches of various sizes and operational capacities in which it employs a Branch Manager at each location. As the name undoubtedly suggests, a Branch Manager is generally responsible for managing the operations of an individual branch bank.

At certain large PNC branch banks, Defendant also employs one or more Assistant Branch Manager(s) ("ABM(s)") whose primary duties include "[a]ssist[ing] the Branch Manager in leading and directing all sales and services" and "lead[ing] and manag[ing] the daily experiences and activities in the branch." PNC Bank Corp. Job Profile, ECF No. 39-2 at 2. Since August of 2009, PNC has employed approximately 2,050 AMBs. PNC pays all ABMs on a salary basis and expects all ABMs to work at least forty hours per week.

PNC also classifies all ABMs as exempt from the overtime pay mandates of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, under the administrative and executive exemptions. Relevant to that designation, the ABM Job Profile notes that they are expected to perform the following essential functions: assign and direct work; institute or recommend corrective action/discipline/discharge; recommend salary increases; conduct annual performance evaluations; recommend promotions; set or recommend new hire rates of pay/hours of work; train employees; and research and resolve subordinate complaints/grievances. PNC Bank Corp. Job Profile, ECF No. 39-2 at 2. The ABM Job Profile also lists other essential functions and/or responsibilities for that position in order of importance: manage sales and service process; drive customer satisfaction and retention; manage risk; and lead employee development and satisfaction. *Id.* at 3-4. PNC has not reviewed its across-the-board policy of designating all ABMs as exempt regardless of their branch assignments or the individual circumstances of their employment since 2004, although all ABMs are supposedly expected to perform the same essential functions with slight variations. *See* Depo. Tr. of PNC Corp. Rep. Vicki Henn, ECF No. 31-2 at 19:10-19:22 ("What might happen branch to branch, because of the size of a branch, the complexity of a branch, the staffing at a particular branch, could be different, but the actual job is the same.").

Beginning in March 2012, PNC employed Plaintiff Victoria Moore as an ABM at branch locations in Rosemount, Ohio and Jackson, Ohio.[1] As an ABM, Moore worked predominately at the Jackson branch and allegedly worked in excess of forty hours per week on a regular basis. Moore held that position for roughly five months before she resigned; however, she alleges that she did not perform the essential functions of the ABM position while employed in that capacity by PNC.

Instead, Moore claims that she spent the overwhelming majority of her time on non-exempt activities that a platform banker normally performs, namely customer service duties, without receiving overtime compensation. Those non-managerial tasks purportedly occupied ninety-five percent of her time and included "servicing walk-in customers [and] customers over the telephone, completing routine paperwork, performing teller duties, and making marketing telephone calls to prospective and existing customers." Pl.'s Compl. at 3 ¶ 17, ECF No. 1. Shortly after Moore ended her employment with PNC in late July or early August of 2012, this lawsuit followed.

Moore initiated this action on August 8, 2012, on behalf of herself and all others similarly situated, in which she alleged that PNC misclassified all ABMs as overtime-exempt and willfully violated the FLSA by failing to pay putative class members premium compensation for work exceeding forty hours per week. The parties have engaged in limited fact discovery pursuant to a case management plan in order to address the issue of conditional certification. During this discovery phase, PNC apparently refused to provide Moore with the identity of other ABMs, documents pertaining to the work activities, work hours, attendance, or schedules of other

---

1. The Court notes that PNC initially hired Moore in February 2011 and placed her into its ACCEL management development program as a non-exempt associate. After graduating from the program in thirteen months, Moore became an exempt ABM. The Court is certainly cognizant of the dispute over whether Plaintiff became a traditional ABM or a "Floating ABM" upon completing her training, but it will disregard this distinction in resolving the pending motion for many of the reasons set forth in Plaintiff's Reply Brief.

ABMs, and materials regarding the operational policies, practices, or protocols in place at PNC's branch bank locations. According to PNC, divulging this information was premature prior to a ruling on conditional certification by the Court.

Plaintiff now moves for conditional certification of a collective class of "[e]very individual who, during any workweek after August 8, 2009, was employed by Defendant (or any of its affiliated companies) as a salaried Assistant Branch Manager and classified as overtime-exempt."[2] Pl.'s Compl. at 4, ¶ 21, ECF No. 1. PNC categorically opposes conditional certification of a class consisting of all ABMs nationwide, but submits that any collective action should be limited to "Floating ABMs" if the Court permits and facilitates notice.

## II. Standard of Review

The "collective action" mechanism set forth in 29 U.S.C. § 216(b) provides that an employee alleging an FLSA violation may bring suit on "behalf of himself . . . and other employees similarly situated." *See Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011)*, rev'd on other grounds*, 133 S. Ct. 1523 (2013). This enforcement provision is, however, subject to the requirement that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *See id.* (detailing the amendments to the FLSA made in response to excessive litigation that "eliminate[d] 'representative action by plaintiffs not themselves possessing claims' and inserted the requirement that similarly situated employees must affirmatively 'opt-in' to an ongoing FLSA suit by filing express, written consents") (quoting *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989)).

---

2. Karen Donnelly is the only other individual who remains as an opt-in member at this time; the claim of a second opt-in member has been dismissed without prejudice. *See* ECF Nos. 15, 30, 37.

4

To decide whether a suit brought under § 216(b) may move forward as a collective action, courts in the Third Circuit apply a two-step approach. *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) ("In *Symczyk*, we noted that this two-tier approach, while 'nowhere mandated . . . appears to have garnered wide acceptance.' We implicitly embraced this two-step approach, and we affirm its use here.") (quoting *Symczyk*, 656 F.3d at 193 n.5).

At the first stage, "the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." *Symczyk*, 656 F.3d at 192. "Similarly situated" is not defined by statute, but our court of appeals recently outlined the level of proof required at this stage: a "'modest factual showing' that the proposed recipients of opt-in notices are similarly situated." *Id.* at 192-93 (citation omitted). Under this standard, "a plaintiff must produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.* at 193 (citation and quotation marks omitted). *See Zavala*, 691 F.3d at 536 n.4 ("The Second Circuit has described this initial step as "determin[ing] *whether* 'similarly situated' plaintiffs do in fact exist . . . .") (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)) (alteration and emphasis in original).

"If the plaintiff carries her burden at this threshold stage, the court will 'conditionally certify' the collective action for the purposes of notice and pretrial discovery." *Id.* However, this "'conditional certification' is not really a certification of a class under the statute at all," but "[r]ather, it is only an exercise of the district court's discretionary power, upheld in *Hoffmann– La Roche, Inc.* 'to facilitate the sending of notice to potential class members.'" *Zavala*, 691 F.3d

at 536 (quoting *Symczyk* 656 F.3d at 194).³ *See Symczyk*, 656 F.3d at 193 n.5 (noting that "[district] courts retain broad discretion in determining whether to 'conditionally certify' a collective action"). Indeed, "certification" at the notice stage "'is neither necessary nor sufficient for the existence of a representative action under [the] FLSA,'" *Symczyk*, 656 F.3d at 194 (quoting *Myers*, 624 F.3d at 555 n.10), "but may be a useful 'case management' tool for district courts to employ in 'appropriate cases,'" *Myers*, 624 F.3d at 555 n.10 (quoting *Hoffmann-La Roche Inc.*, 493 U.S. at 169, 174). Nevertheless, in such cases, a court following this approach will ultimately turn to the second step of this process "[a]fter discovery and with the benefit of a much thicker record than it had at the notice stage." *Symczyk*, 656 F.3d at 193 (citation and quotation marks omitted).

At stage two, the court will address the merits of the case and "makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Id.* (citation omitted). *See Zavala*, 691 F.3d at 536 (adopting the ad-hoc approach at the final certification stage). "This second stage is less lenient, and the plaintiff bears a heavier burden." *Symczyk*, 656 F.3d at 193 (citation and quotation marks omitted). To this end, "plaintiffs must satisfy their burden at this second stage by a preponderance of the evidence." *Zavala*, 691 F.3d at 537. Should plaintiffs meet that level of proof the case may proceed to trial as a collective action. *Symczyk*, 656 F.3d at 193.

### III. Discussion

This motion concerns only the conditional certification stage. Some discovery has occurred during which Moore claims to have "obtain[ed] substantial evidence that [she] and

---

3 Although *Hoffmann–La Roche Inc.* involved the Age Discrimination in Employment Act of 1967 ("ADEA"), that statute imports by reference the enforcement provisions of the FLSA. *See Zavala*, 691 F.3d at 534 n.3 ("[W]e will use FLSA and ADEA cases interchangeably, as the ADEA imports by reference the collective action provision and 'similarly situated' standard of the FLSA.") (citing 29 U.S.C. § 626(b)).

6

other ABMs are similarly situated." Pl.'s Br. in Support of her Mot. at 4, ECF No. 32. Briefly summarized, Moore claims to have uncovered the following "common evidence" during this phase of the litigation: PNC maintains an across-the-board exemption policy for all ABMs; PNC admits that the job duties and functions of the ABM position are the same at every branch companywide; PNC expects its ABMS to work at least forty hours per week; PNC employs a business model in which the exempt salaried employees are expected to work over forty hours per week while the non-exempt hourly employees are strictly prohibited from working overtime hours without pre-approval by their managers;[4] PNC requires all ABMs to operate within PNC's common retail bank hierarchy, which apparently indicates that the ABM position "falls within the same level of authority as the non-exempt positions of Financial Sales Consultant and Teller"; PNC mandates that all ABMs carry the common educational requirement of a high school diploma or equivalent; PNC posts a common job posting that is used to describe every ABM vacancy; PNC uses detailed companywide policies to ensure that all branches are uniformly operated; and PNC instructs all ABMs to complete mandatory corporate training courses developed by its corporate office. *Id.* at 8. To Plaintiff Moore, that factual evidence standing alone is sufficient to justify conditional certification.

Nonetheless, Moore also advances several other positions in support of her motion. First, Moore argues that the Court should wholly disregard the sworn statements of current and former ABMs (*i.e.*, the "happy camper" declarations) filed by PNC to rebut her claim that ABMs perform non-exempt tasks.[5] Second, Moore submits that "[m]any defendants get unnecessarily worked-up about FLSA conditional certification," relying partially on an action from the Middle District of Pennsylvania in which a district court explained that "'[t]he burden in this preliminary

---

4. Moore submits that this business model is "one of the hallmarks of overtime misclassification schemes." Pl.'s Br. in Support of her Mot. at 7, ECF No. 32.
5. The Court notes that it has disregarded these declarations in deciding the pending motion.

7

certification [stage] is light because the risk of error is insignificant.'" *Id.* at 14 (citing *Craig v. Rite Aid Corp.*, 08-CV-2317, 2009 WL 4723286, at *2 (M.D. Pa. Dec. 9, 2009)). Third, Moore highlights that the underlying merits of this action are not at issue and that examination of each ABMs' job duties puts the proverbial cart before the horse. Fourth, Moore cites to a handful of district court opinions which have observed that a company's blanket exemption policy weighs in favor of FLSA conditional certification.

In response, PNC disputes those claims in their entirety. PNC initially questions the syllogism offered by Moore, which highlights that "Plaintiff asks the Court to illogically infer that because [she] allegedly did not perform exempt functions and because PNC classifies all ABMs as exempt, other ABMs also must not have performed exempt functions and are similarly situated to Plaintiff." Def.'s Br. in Opp. At 12-13, ECF No. 38. PNC then proceeds to raise numerous other arguments: that the limited presence of other opt-ins and the absence of a declaration of other employees is telling; that the cases cited by Moore are distinguishable and unpersuasive; and that Moore downplays the substantial burdens placed on PNC should the Court authorize notice at this juncture and wait to meaningfully review many of the ripe issues at a later stage of the litigation. The Court agrees.

Certification at the notice stage, although governed by a lenient standard, is not automatic. *See Harriel v. Wal-Mart Stores, Inc.*, CIV.A. 11-2510 MLC, 2012 WL 2878078, at *4 (D.N.J. July 13, 2012). A plaintiff must instead show a "factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk*, 656 F.3d at 193. Indeed, "[i]n spite of the modest factual nexus evidentiary standard, courts have not hesitated to deny conditional certification when evidence is lacking." *Harriel*, 2012 WL 2878078, at *4 (citations omitted).

For example, courts have readily exercised discretion and denied conditional certification motions when plaintiffs have relied on a common exemption status as the factor that binds a putative class together. *See, e.g.*, *Harriel*, 2012 WL 2878078, at *5 ("The fact that Plaintiff alone claims he spent most of his time performing non-managerial tasks, combined with the evidence showing that the OAM position is subject to nationwide standards under Defendant's corporate policies, does not require the Court to infer that a significant number of other OAMs would have also deviated from the written job description to spend most of their time performing non-managerial tasks."); *Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 801 (S.D. N.Y. 2012), *adopted by*, 09 CIV. 9575 LAP GWG, 2012 WL 2588771 (S.D. N.Y. July 2, 2012) ("Obviously, his pointing to a common policy at Marshalls regarding the job duties of ASMs provides no proof that other ASMs are performing non-exempt duties, particularly given that all policies and writings from Marshalls dictate just the opposite"); *see also Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 323 (E.D. N.Y. 2012) ("As numerous courts in [the Second] Circuit have held, the mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes.") (citations omitted). The Court finds these cases instructive.

Much like these cases, Moore's "argument boils down to the proposition that any employee classified as exempt by a company that does business nationwide is entitled to approval of a collective action for all employees of that business—who may number in the thousands and be spread across 50 states—simply based on the employee's testimony that [s]he was required to perform non-exempt tasks." *Guillen*, 841 F. Supp. 2d at 801. This Court

likewise rejects that argument. Accepting Moore's theory would require the Court to "ignore[ ] the requirement that plaintiff show [s]he is *similarly situated to the employees [s]he proposes to include in the collective action* with respect to [her] claim that [s]he performed non-exempt duties. *Id.* (emphasis in original). Simply put, such evidence is lacking.

Even when considering those decisions that weigh a company's blanket exemption policy in favor of conditional certification, those courts have still required more of showing than an across-the-board classification. *See Struck v. PNC Bank N.A.*, 2:11-CV-00982, 2013 WL 571849 (S.D. Ohio Feb. 13, 2013); *Goodman v. Burlington Coat Factory*, CIV.A. 11-4395 JHR, 2012 WL 5944000 (D.N.J. Nov. 20, 2012). In those cases, the plaintiffs submitted deposition testimony and/or declarations of other allegedly aggrieved employees to demonstrate that similarly situated individuals do in fact exist. *See Struck*, 2013 WL 571849, at *1 ("In support of their Motion, Plaintiffs submit fifteen declarations from opt-in plaintiffs who state that they regularly worked over 40 hours per week to meet PNC's production goals in order to avoid repercussions including but not limited to termination, and did not receive overtime compensation."); *Pereira*, 261 F.R.D. at 65 ("The letters, depositions as to hours requirements, internal complaints and hours budgets from stores nationwide support Plaintiff's allegation of a single policy."). Although declarations are not required, "the presence of such affidavits would bolster [a] motion for conditional certification and [ ] the absence of such affidavits weakens [a] case." *Hall v. Guardsmark, LLC*, CIV.A. 11-213, 2012 WL 3580086 (W.D. Pa. Aug. 17, 2012), *certificate of appealability denied*, CIV.A. 11-213, 2012 WL 4051223 (W.D. Pa. Sept. 13, 2012).

Notably, Moore has neither filed any supporting declarations nor included deposition testimony of any other current or former ABMs to bolster her claim. The only evidence that other similarly situated individuals do exist is the addition of a single other opt-in member—too

thin a reed on which to rest a nationwide certification. Without more, Plaintiff Moore fails to meet her modest burden.

This Court cannot justify ordering and facilitating notice to a nationwide class of plaintiffs possibly numbering in the hundreds or thousands on the basis of such little factual support. Aside from mere allegations, Moore has hardly demonstrated a factual nexus between her alleged experiences at two PNC branches in southern Ohio and the experiences of current and former ABMs throughout the country. Moore instead asks the Court to make a logical leap, an exercise in which it will not engage. Accordingly, the Court will not conditionally certify the proposed class given the dearth of evidentiary support.

## IV. Conclusion

For the reasons set forth above, the MOTION FOR CONDITIONAL CERTIFICATION (ECF No. 31) will be denied.

An appropriate Order follows.

McVerrry J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VICTORIA MOORE, *on behalf of herself and similarly situated employees*,

    Plaintiff,

v.

PNC BANK, N.A.,

    Defendant.

2:12-cv-1135

## ORDER OF COURT

AND NOW, this 29th day of May, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION (ECF No. 31) is **DENIED**. A Case Management Conference is hereby scheduled for Monday, June 17, 2013 at 2:30 p.m. in Courtroom 6C.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:    Counsel of Record.